UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:13-CR-00093-1-JRG-CRW |
| | ) | |
| MARK VAUGHAN | ) | |

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Mark Vaughan's Motion for Compassionate Release or Modification of Sentence [Doc. 105] the United States' Response [Doc. 107], Mr. Vaughan's Reply [Doc. 111], and Mr. Vaughan's Motion for the Appointment of Counsel [Doc. 109]. For the reasons herein, the Court will deny Mr. Vaughan's motions.

### I.  BACKGROUND

In 2014, Mr. Vaughan pleaded guilty to conspiring to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). [Plea Agreement, Doc. 65, at 1; Minute Entry, Doc. 69]. At sentencing, Mr. Vaughan's total offense level was 34 and his criminal history category was VI. [Statement of Reasons at 1 (on file with the Court)]. His guidelines range was 262 to 327 months. [*Id.*]. The Court sentenced him to a below-guidelines sentence of 188 months' imprisonment. [J., Doc. 87, at 2; Statement of Reasons, at 2–3]. According to the Bureau of Prisons, he is serving his term of imprisonment at FCI Elkton and is scheduled for release in February 2027.

Acting pro se, Mr. Vaughan, who is forty-five years old, now moves the Court to order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic. The United States opposes his motion, contending that he has failed to identify an extraordinary and compelling reason for his release and that his release would be inconsistent with 18 U.S.C.

§ 3553(a)'s factors. [United States' Resp. at 6–11]. Having carefully considered the parties' arguments, the Court is now prepared to rule on Mr. Vaughan's motion.

## II. ANALYSIS

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). Although § 3582(c)(1)(A) begins with the declaration that "[t]he court may not modify a term of imprisonment once it has been imposed," Congress enacted the First Step Act, Pub. L. No. 115-319, 132 Stat. 5194 (2018), which amended § 3582(c)(1)(A) so that courts can consider motions for compassionate release once a defendant either exhausts her administrative remedies with the Bureau of Prisons or waits thirty days after submitting a request to the warden. Section § 3582(c)(1)(A) now states:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> >
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). The United States concedes that Mr. Vaughan has satisfied the exhaustion requirement. [United States' Resp. at 4].

Under § 3582(c)(1)(A), compassionate release is "discretionary, not mandatory," *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) (citation omitted), and the statute contains three substantive requirements that the Court must address in sequential order before it can grant compassionate release, *id.*; *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must determine that "extraordinary and compelling reasons warrant" a sentence reduction. *Ruffin*, 978 F.3d at 1004 (quoting § 3582(c)(1)(A)(i)). Second, the Court must determine that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (quoting § 3582(c)(1)(A)). And third, the Court must consider any applicable factors under § 3553(a) "and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Jones*, 980 F.3d at 1108 (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010))).

### A. The First Requirement: Extraordinary and Compelling Circumstances

When determining whether an inmate, in requesting compassionate release, has identified reasons that are extraordinary and compelling in nature, "courts have universally turned to USSG § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." *United States v. Coker*, No. 3:14-CR-085, 2020 WL 1877800, at *3 (E.D. Tenn. Apr. 15, 2020) (quotation omitted). Section 1B1.13 states:

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; or

(B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

USSG § 1B1.13(1)–(3).

Although § 1B1.13 does not define "extraordinary and compelling reasons," the guideline commentary's first application note lists four "circumstances" in which "extraordinary and compelling reasons" are present:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

4

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

USSG § 1B1.13 cmt. n.1(A)–(D). In these provisions, "Application Note 1 identifies three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall," *Ruffin*, 978 F.3d at 1005 (citing *id.*), under which the Bureau of Prisons' director has license to grant release for "reason[s] other than" the three reasons in Application Note 1(A)–(C), USSG § 1B1.13 cmt. n.1(D).

But the First Step Act "allow[s] defendants," for the first time, "to file reduction-of-sentence motions when the Bureau refuse[s] to do so," *Ruffin*, 978 F.3d at 1004, and district courts, when considering these motions and determining whether extraordinary and compelling circumstances exist for an inmate's release, now have authority to consider "reason[s] other than" the three reasons in Application Note 1(A)–(C), *see Jones*, 980 F.3d at 1111 (stating that "the as-written catch-all provision," which "still refers to the Director of the BOP as the absolute arbiter of 'extraordinary and compelling,'" "contravenes Congress's motivation for reforming compassionate release in the First Step Act and ignores the Sentencing Commission's grounds

5

for augmenting § 1B1.13's application notes"); *compare Ruffin*, 978 F.3d at 1006, 1008 (declining to decide whether, "after the First Step Act, district courts may find additional extraordinary and compelling reasons other than those in [§ 1B1.13's] commentary (such as a once-in-a-century pandemic)," or whether, instead, "Application Note 1's reasons remain exclusive and that the note's catchall delegates to the Bureau of Prisons (not the courts) the task of identifying other reasons"), *with Jones*, 980 F.3d at 1101, 1109, 1111 ("We resolve a debate that we first teed up in *Ruffin*, holding that" district courts, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act," have "full discretion to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (footnote omitted)).

The district courts' authority to eschew Application Note 1(A)–(C) comes from the Sixth Circuit's recent decision in *Jones*, in which the Sixth Circuit observed that the Sentencing Commission has not updated § 1B1.13 in response to the First Step Act and concluded that § 1B1.13, in its current form, therefore cannot serve as an applicable policy statement under § 3582(c)(1)(A). *Jones*, 980 F.3d at 1101, 1109; *compare* 18 U.S.C. § 3582(c)(1)(A) (stating that district courts must conclude that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission"), *with Jones*, 980 F.3d at 1101, 1109 (holding that § 1B1.13 is "not an 'applicable' policy statement in cases where incarcerated persons file their own motions in district court for compassionate release" because "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018" (citation omitted)).

In deciding *Jones*, however, the Sixth Circuit did not appear altogether to forbid district courts from looking to § 1B1.13—that is, to the "three specific extraordinary and compelling reasons" in Application Note 1(A)–(C), *Ruffin*, 978 F.3d at 1005 (citing USSG § 1B1.13 cmt. n.1(A)–(D))—with an eye toward guidance, rather than with an eye toward deference. *See*

6

*Jones*, 980 F.3d at 1109, 1111 (stating that § 1B1.13 "does not *wholly* survive the First Step Act's promulgation" and expressing an intention of "preserving as much of § 1B1.13 that can be saved" (emphasis added)); *id.* at 1111 (recognizing that "federal judges *may* skip" an analysis under § 1B1.13 and have "full discretion" to choose whether "to define 'extraordinary and compelling' without consulting the policy statement [in] § 1B1.13" (emphasis added) (footnote omitted))); *see also United States v. Sherwood*, 986 F.3d 951, 953–54 (6th Cir. 2021) (stating that § 1B1.13 "no longer provides an *independent* basis for denying compassionate release" and remanding the case because the district court had "relied on § 1B1.13(2) as the *sole* basis for denying [the defendant's] compassionate release," at the exclusion of § 3553(a)'s factors (emphasis added) (citation omitted)); *United States v. Carr*, No. 20-5784, at 3 (6th Cir. Oct. 26, 2020) (PACER) (concluding that "the district court did not err by considering the Sentencing Commission's statement defining 'extraordinary and compelling reasons' when deciding whether [the defendant's] circumstances warranted compassionate release" because the district court merely "treated the policy statement as 'helpful guidance'" (quotation and citation omitted)); *but see United States v. Mullins*, No. 20-5848, at *2–3 (6th Cir. Jan. 8, 2021) (PACER) (vacating this Court's order, which the Court had entered prior to the Sixth Circuit's decision in *Jones*, and remanding the case so that the Court could "recognize its discretion to find extraordinary and compelling reasons other than those listed [in § 1B1.13]").

Even so, the Court will abstain from an analysis under Application Note 1(A)–(C)—outmoded as it is—and exercise its discretion in determining whether Mr. Vaughan has identified an extraordinary and compelling reason for his release. Mr. Vaughan maintains that two extraordinary and compelling reasons warrant his release. First, he argues that he has underlying medical conditions that place him at "increase [sic] risk of negative outcome from COVID-19."

[Def.'s Mot. at 6]. Second, he argues that he was wrongly sentenced as a career offender under USSG 4B1.2. [*Id.* at 9].

In response to Mr. Vaughan's first argument, the United States maintains that Mr. Vaughan's medical conditions do not constitute an extraordinary and compelling reason for his release because he "has been fully vaccinated against COVID-19, thereby reducing his risk of contracting COVID-19 or suffering severe illness from it." [United States' Resp. at 9]. Because Mr. Vaughan is fully inoculated with Moderna's vaccine, [Med. Records, Doc. 108, at 32], the Court agrees that he is no longer at heightened risk of severe illness from COVID-19 and that his medical conditions therefore do not constitute an extraordinary and compelling reason for his release. *See United States v. Lemons*, ___ F.4th ___, 2021 WL 4699249, at *3 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced. . . . [A] defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." (citation omitted)); *see also United States v. Traylor*, ___ F.4th ___, 2021 WL 5045703, at *1 (6th Cir. 2021) ("Accepting the serious nature of [the defendant's] alleged medical conditions, her argument is foreclosed by our recent holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" (quoting *id.*)).

As for Mr. Vaughan's second argument, he relies on "the modified categorical approach" in contending that the Court incorrectly sentenced him under USSG § 4B1.2. [Def.'s Mot. at 11]. He cites *Mathis v. United States*, 136 S. Ct. 2243 (2016), a case that he unsuccessfully raised in

8

pursuing relief under 28 U.S.C. § 2255. [*Id.* at 2, 11]. He states that the Court "never reached the merits of [his] argument regarding applicability of *Mathis* decision" because "this court held that the [§ 2255] petition was untimely." [Def.'s Mot. at 11].[1] In response, the United States argues that Mr. Vaughan is relying on a non-retroactive change in the law—which, it maintains, is not an extraordinary and compelling reason for compassionate release. [United States' Resp. at 10].

A new right is retroactive to cases on collateral review only if the Supreme Court holds it to be retroactive. *Tyler v. Cain*, 533 U.S. 656, 663 (2001). Mr. Vaughan cites no precedent in which the Supreme Court has declared a new right to be retroactive. Although he cites *Mathis*, he concedes that *Mathis* is not retroactive. [Def.'s Mot. at 11]. Because he cites no case in which the Supreme Court has recognized a retroactive right, the Court agrees with the United States' assertion that he lacks a cognizable basis for compassionate release under § 3582(c)(1)(A). *See United States v. Hunter*, 12 F.4th 555, 563 (6th Cir. 2021) ("[N]on-retroactive changes in the law, whether alone or in combination with other personal factors, are not 'extraordinary and compelling reasons' for a sentence reduction.").

But even if Mr. Vaughan had identified an extraordinary and compelling reason for his release under § 3582(c)(1)(A), he still would not be entitled to release because he has not shown that § 3553(a)'s factors weigh in favor of it. *See Ruffin*, 978 F.3d at 1008 ("We have repeatedly recognized that district courts may deny relief under the § 3553(a) factors even if 'extraordinary

---

[1] To the extent that Mr. Vaughan's argument is an iteration of his claim under § 2255, the Court will not permit him to skirt § 2255's statute of limitations by attempting to resurrect a claim that the Court has already rejected as untimely. *Cf. Johnson v. United States*, 246 F.3d 655, 659 (6th Cir. 2001) ("The potential for abuse of such a rule is evident: every defendant seeking to file an untimely § 2255 motion could do an end-run around the AEDPA limitation period by filing a timely, but ultimately meritless, Rule 33 motion."); *see United States v. Reyes*, No. 3:04-CR-00161-GCM-DCK, 2021 WL 3872062, at *2 (W.D.N.C. Aug. 30, 2021) ("Defendant has not met his burden of establishing extraordinary and compelling circumstances that warrant compassionate release. Defendant was a qualified career offender . . . This Court has already previously denied and dismissed motions to vacate based on his challenges to the adequacy of his predicate offenses, and the ruling in *Mathis v. United States* does not alter the Court's analysis.").

9

and compelling' reasons would otherwise justify relief." (citations omitted)); *see also Sherwood*, 986 F.3d at 954 (stating that "[the defendant] must make a compelling case as to why the sentencing court's § 3553(a) analysis would be different if conducted today" (citation omitted)).[2]

## B. The Third Requirement: Applicable Factors under § 3553(a)

The Court considered § 3553(a)'s factors "in some depth at the original sentencing," *United States v. Curry*, 606 F.3d 323, 331 (6th Cir. 2010), so it has no obligation to readdress all of those factors now, *see* 18 U.S.C. § 3582(c)(1)(A) (requiring district courts to consider § 3553(a)'s factors "to the extent that they are applicable"); *cf. United States v. Jones*, 407 F. App'x 22, 25 (6th Cir. 2011) (stating that in *Curry* "we held that the district court did not abuse its discretion even though it had not expressly considered all of the § 3553(a) factors" because "§ 3582(c)(2) proceedings 'do not constitute a full resentencing of the defendant' and do not require the same procedural formalities as plenary sentencings" (quoting *Curry*, 606 F.3d at 330–31)); *see also Jones*, 980 F.3d at 1114 (stating that "[d]istrict courts should consider all *relevant* § 3553(a) factors before rendering a compassionate release decision" (emphasis added) (citing *Gall v. United States*, 552 U.S. 38, 49–50 (2007))). "[A]s long as the record *as a whole* demonstrates that the pertinent factors were taken into account," the Court's analysis will be adequate. *Jones*, 980 F.3d at 1114 (quotation omitted).

In Mr. Vaughan's case, the factors that the Court will address include § 3553(a)(1), (2), (4), and (6):

---

[2] The Court will exercise its discretion to skip an analysis under § 1B1.13 in favor of an analysis under § 3553(a). *See Jones*, 980 F.3d at 1108, 1111 (holding that § 1B 1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release" and stating that district courts, therefore, "may skip step two of the § 3582(c)(1)(A) inquiry"); *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020) ("The government . . . point[s] to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument is a dead letter after the Sixth Circuit's decision in *Jones* . . . . That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. (quoting 18 U.S.C. § 3553(a)(2)(C))).

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>> . . . .
>
> (4) the kinds of sentence and the sentencing range established for—
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
>
>> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a)(1)–(2), (4), (6). As for the nature and circumstances of Mr. Vaughan's offense, he conspired to distribute fifty grams or more of methamphetamine—a serious offense. *See United States v. Dilg*, 726 F. App'x 368, 371 (6th Cir. 2018) ("We have categorically labeled drug offenses as serious." (citing *United States v. Moss*, 217 F.3d 426, 431 (6th Cir. 2000))); *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense[.]" (citations omitted)); *cf. United States v. Suber*, 75 F. App'x 442, 444 (6th Cir. 2003) (describing a conspiracy to distribute heroin as "grave"). In addition, Mr. Vaughan admittedly conspired to distribute a large quantity of methamphetamine—between 50 and 150 grams. [Plea Agreement at 3]; *cf. United States v. Castro*, 960 F.3d 857, 865 (6th Cir. 2020) (stating that a hundred grams of heroin is a "large quantit[y] of drugs"); *United States v. Farmer*, No. 95-6637, 1996 WL 694147, at *4 (6th Cir. Dec. 3, 1996) (describing 150 grams of cocaine base as "a large quantity of narcotics").

11

Also, the Court has refamiliarized itself with Mr. Vaughan's presentence investigation report and his history and characteristics, and the Court is of the conviction that he would pose a danger to the public if it were to order his release. At sentencing, his criminal history category was VI, the highest possible category. His adult criminal history, which is extensive, began at age twenty-four, and includes multiple drug-related convictions, in addition to a conviction for carrying a concealed dagger. [PSR, Doc. 73, ¶¶ 44–46]. He also received two criminal history points under USSG § 4A1.1(d) because he committed the current offense—i.e., a conspiracy to distribute fifty grams or more of methamphetamine—while serving a state-court sentence. [*Id.* ¶ 51]. A sentence reduction therefore would not reflect the seriousness of Mr. Vaughan's offense and adequately protect the public from future crimes.

Next, the Court shifts its analysis to § 3553(a)(6) and notes that "courts have generally granted compassionate release only to defendants who have served a significant portion of their sentences." *United States v. Kincaid*, No. 3:10-CR-00160-1-TAV-HBG, at 13 (E.D. Tenn. Oct. 29, 2019) (citations omitted) (PACER), *aff'd*, 802 F. App'x 187 (6th Cir. 2020). According to the BOP, Mr. Vaughan's release date is February 2027, and the United States points out that, to date, he has served only about half of his sentence, and with good-time credit, he has served about fifty-nine percent of his sentence. [United States' Resp. at 11]; *see* [BOP Computation Data, Doc. 107-2, at 1]. Because he still has a significant portion of his sentence left to serve, his release would result in a substantial reduction in his sentence. *See Kincaid*, 802 F. App'x at 188 ("[T]he need to provide just punishment, the need to reflect the seriousness of the offense, and the need to promote respect for the law permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). A substantial reduction in Mr. Vaughan's sentence simply would not reflect the seriousness of his offense, promote respect for

12

the law or afford adequate deterrence, or adequately protect the public from future crimes. 18 U.S.C. § 3553(a)(2).

If the Court were to grant a substantial reduction in his sentence by ordering his release, it would also risk creating "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(6); *see Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of an inmate's request for compassionate release when he "ha[d] yet to serve even half of his 25-year sentence"). And also worth noting: though Mr. Vaughan's guidelines range was 262 to 327 months, the Court, in accepting the parties' Rule 11(c)(1)(C) plea agreement, imposed a 188-month sentence—more than six years below the bottom of the guidelines range. *See Ruffin*, 978 F.3d at 1008 (affirming the district court's denial of a motion for compassionate release when "the court had already varied downward by five years from [the defendant's] guidelines range when imposing that lengthy sentence").

Before concluding its analysis, the Court must address one more point: Mr. Vaughan's post-conviction record, which Mr. Vaughan mentions in his motion. [Def.'s Mot. at14]. He states that he has incurred no post-conviction disciplinary infractions while serving his sentence. [*Id.*]. He also states that he has used his time to his advantage by completing numerous courses and programs and obtaining his GED. All of this is to Mr. Vaughan's credit, and the Court applauds his efforts and accomplishments—they will serve him well in the future. But good behavior is expected of federal inmates. *See United States v. Martin*, No. 6:06-105-DCR, 2021 WL 134602, at *2 (E.D. Ky. Jan. 13, 2021) ("These admirable efforts will likely serve [the defendant] both now and well after his term of incarceration ends. But good behavior and education, which are expected of incarcerated individuals, do not constitute 'extraordinary and compelling circumstances' that warrant a sentence reduction."); *United States v. Logan*, No. 97-cr-993, 2021

13

WL 1221481, at *8 (D. Minn. Apr. 1, 2021) ("Prisoners are *supposed* to follow the rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met baseline expectations, not that he has done something extraordinary."); *cf. United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005) (stating that a defendant's re-assimilation into pre-incarceration life is "commendable," but it is "expected of a person on supervised release and do[es] not constitute the 'exceptional behavior' contemplated in the precedents").

A defendant's rehabilitative efforts alone, therefore, are insufficient to justify his release under § 3582(c)(1)(A). *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *Ruffin*, 978 F.3d at 1009 ("Congress has made clear that rehabilitation 'alone' does not provide a proper basis for relief. All told, then, the court reasonably concluded that [the defendant's] rehabilitation efforts, when considered alongside the other § 3553(a) factors, did not warrant any greater reduction of his already below-guidelines sentence. (citing 28 U.S.C. § 994(t))). Because the applicable factors that the Court has analyzed under § 3553(a) work against Mr. Vaughan's release, his rehabilitative efforts alone cannot act as a ballast that outweighs those factors. *See United States v. Gaston*, 835 F. App'x 852, 855 (6th Cir. 2020) ("[The defendant] points to no evidence other than his rehabilitation that might favor relief. Therefore, *Ruffin* forecloses remand on this argument."). In sum, Mr. Vaughan fails to demonstrate that § 3553(a)'s factors favor his release.

### C. Motion for the Appointment of Counsel

In Standing Order 19–04, the Court appointed the Federal Defender Services of Eastern Tennessee ("FDSET") to represent a defendant who moves for relief under § 3582(c) and the First Step Act: "FDSET shall file a supplement to defendant's pro se motion without delay," but

"[i]f FDSET determines that defendant's motion needs no supplementation, then FDSET shall file a notice stating so." SO 19-04. FDSET filed a notice in which it states that it "has determined that based on the number of its pending cases, it would be appropriate" to appoint "a non-FDSET attorney" to represent Mr. Vaughan. [Notice, Doc. 109, at 1].

In place of FDSET, the Court could conceivably appoint counsel to Mr. Vaughan under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A *et seq.*, though he is not entitled to representation under the CJA as a matter of right. *See id.* § 3006A(a)(1)–(2) (authorizing courts to provide financially eligible defendants with representation under certain circumstances or when "the interests of justice so require"); *cf. Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Johnson v. Avery*, 393 U.S. 483, 488 (1969) (stating that courts are under no requirement "to appoint counsel for prisoners who indicate, without more, that they wish to seek post-conviction relief" and that the onus to raise "a claim to post-conviction relief usually rests upon the indigent prisoner himself with such help as he can obtain within the prison walls or the prison system" (citation omitted)).

In determining whether the interests of justice require the Court to channel "precious taxpayer funds" toward Mr. Vaughn's representation, *United States v. Mosely*, 779 F. Supp. 2d 398, 400 (D. Mass. 2011), the Court "consider[s] several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *United States v. Banner*, No. 2:12-CR-093, 2020 WL 4289597, at *4 (E.D. Tenn. July 27, 2020) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993))); *see Chastain v. Williams*, No. 4:20-CV-01036, 2020 WL 5994519, at *3 (N.D. Ohio Oct. 9, 2020) ("A district court does not abuse its discretion by declining to appoint counsel where the

issues in the case are straightforward and capable of resolution on the record or the Petitioner has a good understanding of the issues and the ability to present forcefully and coherently his contentions." (quotation omitted)).

In the vast majority of cases, a request for compassionate release due to COVID-19 is "not beyond the capability of an ordinary *pro se* litigant," and this case is no different. *Banner*, 2020 WL 4289597 at *5. In moving for compassionate release, Mr. Vaughan has expressed, with clarity, arguments that are straightforward and familiar to the Court, and the interests of justice therefore do not weigh in favor of the appointment of counsel. *See United States v. Cormier*, No. 21-5103, at 4 (6th Cir. July 6, 2021) (PACER) (affirming this Court's denial of the defendant's motion to appoint counsel because "the compassionate release issue was not factually or legally complex, and [the defendant] was able to address the issue adequately" (citation omitted)).

### III. CONCLUSION

While the Court sympathizes with Mr. Vaughan's concerns, he is not entitled to compassionate release under § 3582(c)(1)(A) because he has not identified an extraordinary and compelling reason for his release and the relevant factors under § 3553(a) militate against his release. His Motion for Compassionate Release or Modification of Sentence [Doc. 107] is therefore **DENIED**, and his Motion for the Appointment of Counsel [Doc. 109] is likewise **DENIED**.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
